CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 3 0 2012

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| KENNETH D. HUGHES, | ) | Civil Action No. 7:12cv00542 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | |
| CITY OF NORTON, VIRGINIA et. al, | ) | |
| | ) | By: Samuel G. Wilson |
| Defendants. | ) | United States District Judge |

    Plaintiff, Kenneth D. Hughes, who is awaiting trial on four counts of abduction, brings this action pursuant to 42 U.S.C. § 1983 against the City of Norton, Virginia ("the City"), the Norton Police Department ("the Department"), and the alleged victims and victims' parents for violations of his civil rights arising out of his arrests on March 21 and 22, 2012, and subsequent pre-trial detention at the Southwest Virginia Regional Jail ("SWVRJ") in Duffield, Virginia. Hughes' trial is scheduled to commence on December 4, 2012. Even considered in the light most favorable, Hughes' complaint fails to contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Accordingly, the court *sua sponte* dismisses his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

I.

    Hughes alleges in a disjointed and conflicting complaint that on March 21, 2012, he went to John I. Burton High School, where a baseball game was taking place, to buy two sodas. Hughes claims he met two women exiting the restroom at the high school, and the three had a short, pleasant exchange, and afterwards he went home.[1] He states that the women allege that he chased them around the baseball field at the high school. (Compl. 2, ECF No. 4.) A short time

---

[1] In the paperwork attached to his complaint, Hughes states that he "held the restroom door, [because he] didn't want to let [his accusers] out." (Compl. 2, ECF No. 4.)

after this encounter, the Norton Police Department arrested Hughes for public intoxication and using foul language in public, and the next day authorities charged him with four counts of abduction. Hughes was booked into SWVRJ where he remains held without bond awaiting trial, which is scheduled for December 4, 2012.

Hughes contends that the judge and the Commonwealth's Attorney have informed him that the stories of the alleged victims are in conflict. Hughes maintains that the victim's conflicting allegations should cause the Commonwealth to drop the case, and he claims the Commonwealth's failure to do so is racially motivated. Hughes expresses dissatisfaction with the length of his pre-trial incarceration and frustration with the postponements in his case. He seeks compensatory damages and dismissal of the charges.

## II.

Hughes alleges that the City and the Department violated his civil rights by arresting and detaining him on four counts of abduction, stemming from the March 21, 2012 incident. Despite the liberal pleading standards accorded to *pro se* plaintiffs, the court finds that Hughes' § 1983 claims are subject to dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), a court shall "at any time" dismiss an *in forma pauperis* complaint if it "fails to state a claim upon which relief may be granted." "[A] judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted). The court construes *pro se* complaints liberally, imposing "less stringent standards than formal pleadings drafted by lawyers." Id. (internal quotation marks and citation omitted). Even still, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Atherton v. D.C. Office of Mayor, 567 F.3d 672, 681–82 (D.C. Cir. 2009) ("[While *pro se* complaints] must be held to less stringent standards than formal pleadings[,] . . . even a *pro se* complainant must plead factual matter that permits the court to infer more than the mere possibility of misconduct.") (internal quotation marks and citations omitted).

To state a claim for relief under § 1983, a plaintiff must allege facts indicating that plaintiff has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from the conduct of a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978); Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (to establish liability, a plaintiff must demonstrate that (1) a government actor deprived the plaintiff of his federal rights, and (2) the harm was the result of an official policy or custom of the local entity). Thus, a governmental entity is liable under § 1983 only when the entity itself is a "moving force" behind the deprivation. Polk Cnty. v. Dodson, 454 U.S. 312, 326 (1981). That is, the entity's official policy must have played a part in the alleged violation of federal law. Oklahoma City v. Turtle, 471 U.S. 808, 817–818 (1985).[2]

Here, Hughes fails to identify any policy of the City or Department leading to his arrest, prosecution and detention. Indeed, Hughes' sparse complaint recites no readily discernible

---

[2] A policy is "a course of action consciously chosen from among various alternatives respecting basic governmental functions, as opposed to episodic exercises of discretion in the operational details of government." Spell v. McDaniel, 824 F.2d 1380, 1386 (4th Cir. 1987) (internal quotation marks omitted). A custom exists when the "persistent and widespread" practices of government officials are "so permanent and well-settled as to [have] the force of law." Spell, 824 F.2d at 1386 (internal quotation marks omitted) (insertion in original).

factual allegations against the City or the Department showing a racially motivated policy or custom leading to his arrest and prosecution. Therefore, pursuant to § 1915(e)(2)(B), the court will dismiss Hughes' claims against the City and the Department for failure to state a claim upon which relief may be granted.

### III.

Hughes' allegations do not remotely show or plausibly allege that his alleged victims and their parents were acting under color of state law, a necessary element of a § 1983 action. See West v. Atkins, 487 U.S. 42 (1988). Therefore, the court dismisses Hughes' claims against them, as well.

### V.

For the stated reasons,[3] the court dismisses this action for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**ENTER:** November 30, 2012.

UNITED STATES DISTRICT JUDGE

---

[3] The court also notes that absent extraordinary circumstances, federal courts must refrain from interfering with a state's pending criminal proceedings. See, e.g., Younger v. Harris, 401 U.S. 37 (1971) ("Since the beginning of country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts."). This requires federal courts to abstain from constitutional challenges to state judicial proceedings, no matter how meritorious the challenge, if the federal claims have been or could be presented in the state's judicial proceeding. Hughes seeks dismissal of the charges against him. However, Hughes has shown nothing that would compel the court to interfere with the Commonwealth of Virginia's pending criminal proceedings. Consequently, at this juncture, Hughes' challenge to the state court proceedings must take place in those proceedings.